**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

CRIMINAL ACTION NO. 07-15-C

LISA MCDOUGAL,                                                              PLAINTIFF,

V.                        <u>MEMORANDUM OPINION AND ORDER</u>

ALTEC INDUSTRIES, INC.,                                                    DEFENDANT.

* * * * * * * * * *

This matter is before the court upon the motion of the plaintiff, Lisa

McDougal, for partial summary judgment (DE 17) and the motion of the defendant,

Altec Industries, Inc., for summary judgment (DE 16).  The court, having reviewed

the record and being sufficiently advised, will grant the motions in part and deny

them in part.

**I.  Factual Background**

The defendant manufactures aerial devices, digger derricks, and specialty

equipment for the electric utility, telecommunications and tree care industries.  The

plaintiff began employment with the defendant in May 1999.  During her

employment she held a variety of positions, but at the end of her employment, the

plaintiff was working in the electrical assembly.  On January 1, 2006, the

defendant revised its Family and Medical Leave Act Policy ("Policy"), and the

plaintiff received those revisions.  Under the Policy, an associate who is eligible

under the Family and Medical Leave Act ("FMLA") may take leave for up to twelve

1

work weeks in any twelve-month period due to a serious health condition.  Cindy Wimp, the Human Resources supervisor for the defendant, approves or denies requests for leave under the FMLA.

In March 2006, the plaintiff began to experience nausea and pain in her abdomen and back.  On March 17, 2006,  the plaintiff determined the pain was too severe to perform her job, and she informed a Human Resources associate that she could not come to work.  That same day, the plaintiff made a doctor's appointment.  She visited a physician who prescribed a course of medication to alleviate her pain but did not diagnose its source.  On March 26, 2006, the plaintiff submitted a Leave of Absence Request to the defendant's Human Resources Department requesting Family and Medical Leave for a serious health condition that made her unable to perform the essential functions of her job.  DE 17 Exhibit E.  In her request, the plaintiff described her condition as an "aggravated disc . . . extreme stomach pain accompanied with extreme nausea - reason unknown at this time" which commenced on March 17.  *Id.*  The plaintiff also wrote on the request that she had undergone various tests, was too sick to work, and needed to have more tests to determine the medical reason behind her illness.  *Id.*  On March 28, 2006, Dr. Ajit S. Nanda completed a "Certification of the Health Care Provider" form ("Certification Form"), which the plaintiff faxed to the defendant on March 30, 2006.  DE 17 Exhibit F.  On April 5, 2006, Wimp approved the plaintiff's FMLA

leave to begin March 17, 2006, through March 30, 2006.  DE 17 Exhibit H.[1]  On

her response to the leave request, Wimp noted that "the Health Certification

provided by the doctor is very vague and does not provide enough information to

excuse any day past March 30.  We really need the Health Certification Form to

state the diagnosis with specific reasons for the incapacity and a better idea of how

long it could last.  I have included another Health Certification form for this

purpose.  It might be best if the specialist completed it to get more specific info."

*Id.*  The plaintiff received treatment over the next several weeks and ultimately her

gall bladder was removed.  During this period, the plaintiff provided the defendant

with updates and documentation of her treatment; however, she never provided

another Health Certification form.[2]  On May 9, 2006, Wimp sent the plaintiff a

letter terminating her employment, effective March 31, 2006, because of her failure

to return to work upon the expiration of her approved FMLA leave.[3]  The plaintiff

---

[1]  Wimp approved leave up to March 30, 2006, by reviewing both the Certification Form which contained an unknown duration and a note from Baptist Hospital East stating that the plaintiff could not return to work until March 30, 2006.  DE 16 Wimp Deposition at 47.

[2] On April 9, 2006, the plaintiff faxed Wimp the results of an upper-GI endoscopy performed by a Dr. Horlander on April 5, 2006.  On April 13, 2006, Wimp left a voice message requesting the plaintiff to submit the new Health Certification.  The plaintiff left a message with Wimp on April 18, 2006, indicating she had scheduled an HIDA scan on April 20, 2006.  On May 2, 2006, the plaintiff faxed paperwork to Wimp which showed she had visited with a surgeon and had surgery scheduled for May 10.

[3]  Wimp stated, "The first Certification [the plaintiff] submitted provided information from Dr. Mohana R. Aria, and a leave was granted until March 30, 2006.  A second Certification form was sent to [the plaintiff] on April 5, 2006

filed suit against the defendant, alleging violations of the FMLA.

## II.  Standard of Review

Summary judgment may be granted only when there are "no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)).  "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).  To be entitled to summary judgment, "the moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only show . . . that there is an absence of evidence to support the nonmoving party's case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  To survive summary judgment, the non-moving party must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.  FMLA Interference Claim

Both parties have moved for summary judgment as to the plaintiff's claim that the defendant interfered with her FMLA rights.  Under 29 U.S.C. § 2615, it is

---

when [the plaintiff] did not report to work at the expiration of the leave on March 30 . . . . To date, we have not received a Certification form executed by a physician, which would support a leave of absence."  DE 17 Exhibit L.

4

unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the act.  Any violations of the FMLA or of the regulations constitute interference with the exercise of such rights.  29 CFR § 825.220(b).  To prevail on an interference claim, a plaintiff must establish that (1) she is an eligible employee as defined under the FMLA; (2) the defendant is an employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take leave; and (5) her employer denied FMLA benefits to which she was entitled.  *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).  The defendant does not dispute that the plaintiff satisfies the first, second and fourth elements of her claim.  At issue is whether she was entitled to leave after March 30, 2006, under the FMLA and whether the defendant denied her the FMLA benefits to which she was entitled.

A.  Entitlement to Leave After March 30, 2006

The FMLA provides that an eligible employee is entitled to a total of twelve weeks of unpaid leave during any twelve-month period in the event that the employee has a serious medical condition that makes the employee unable to perform the functions of her position.  29 U.S.C. § 2612(a)(1)(D).  A serious medical condition entitling an employee to FMLA leave includes any illness, injury, impairment, or physical condition that involves continuing treatment by a health-care provider.  29 C.F.R. § 825.114(a)(2).  Such treatment includes a period of

5

incapacity of more than three consecutive calendar days and any subsequent treatment or incapacity involving either: "(A) Treatment two or more times by a health care provider . . .; or (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider." *Id.*

While an employee may be eligible for FMLA leave due to a serious medical condition, the FMLA expressly permits employers to require that an employee's leave request be supported by a certification issued by the employee's health-care provider. To exercise that right, the employer must advise an employee of the anticipated consequences of an employee's failure to provide adequate certification at the time the employer requests the certification. 29 C.F.R. § 825.305. When properly asked to do so, an employee must show that she provided a medical certification within a reasonable time of the employer's request and that the certification was sufficient under the law. *See* 29 U.S.C. § 2612 (entitlement to leave is subject to certification).

### 1. Eligibility for FMLA Leave: Serious Health Condition

In order to show that she is protected under the FMLA, the plaintiff must show she had a serious health condition – i.e., that she was incapacitated for a period of at least three days and that she was either treated by a health-care provider on two or more occasions or treated by such a provider on at least one occasion resulting in a regimen of continuing treatment, and that she was unable to

6

perform the functions of her position.  The record establishes that the plaintiff met this requirement.

The court begins its analysis by focusing on whether the plaintiff's condition constituted an incapacity of more than three consecutive calendar days that involves qualifying treatment.  "Incapacity" is defined as the inability to work or perform other regular daily activities due to the serious health condition.  Dr. Nanda certified that the plaintiff was unable to perform work of any kind.  DE 17 Exhibit F. He also certified that the plaintiff's incapacity began on March 17, 2006, and that at the time he signed the certification on March 28, 2006, he concluded that it would continue for an undetermined length of time.  DE 17 Exhibit F.  The plaintiff has demonstrated that her illness rendered her unable to work more than three consecutive calendar days.

Next the court must determine whether the plaintiff underwent treatment two or more times by a health-care provider or if the treatment on at least one occasion by a health-care provider resulted in a regimen of continuing treatment. On March 20, 2006, the plaintiff sought treatment by Dr. Nanda of Bullitt County Family Practitioners for her severe abdominal pain and back pain.  DE 17 Exhibit J. At that time, the doctor gave the plaintiff Aciphex, Mobic, Fleril, and Phenegran. DE 17 Exhibit J.  On March 23, 2006, still suffering from abdominal and back pain, the plaintiff returned to Bullitt County Family Practitioners where she was treated by Dr. Gill.  *Id.*  Dr. Gill thought the plaintiff had possible stomach ulcer/ gastritis,

7

and he referred her to the hospital for further evaluation.  DE 17 Exhibit J.  On

March 27, 2006, the plaintiff went to Baptist Hospital East Emergency Room,

where she was given a CT-scan, an ultrasound and IV fluids for dehydration.  DE

17 Exhibit A; DE 16 Wimp Deposition Exhibit 8.  Dr. Nanda's notes from March 27,

2006, also reflect that the plaintiff "went to the ER where they did CT and US to

r/o cholelithiasis and any other abd etiolgy."  DE. 17 Exhibit J.  Dr. Nanda

completed the Certification Form on March 28, 2006.  Dr. Nanda indicated on that

form that the plaintiff had a period of incapacity of more than three consecutive

days that involved either treatment two or more times by a health-care provider or

treatment by a health-care provider on at least one occasion which resulted in

continuing treatment.  DE 17 Exhibit F.  The facts indicate that at the point the

plaintiff submitted her Certification Form supporting her request for FMLA leave,

she had received treatment at least twice by health-care providers.  Treatment

includes examinations to determine whether a serious health condition exists.  DE

17 Exhibit G; 29 C.F.R. § 825.114(b).  During that period the plaintiff was also

prescribed a variety of medications from the doctors.  A course of prescription

medication is a regimen of continuing treatment.  DE 17 Exhibit G.

    Beyond March 30, 2006, the plaintiff also saw more than two health-care

providers.  An upper-GI endoscopy was performed on April 5, 2006, by Dr.

Horlander, and the records indicate the plaintiff was awaiting pathology results and

continuing Aciphex.  DE 17 Exhibit I.  On April 20, 2006, the plaintiff underwent an

8

HIDA scan.  DE 17 Exhibit A.  The results of that scan indicated that the plaintiff's gall bladder was functioning at only 15%.  DE 17 Exhibit A.  On May 2, 2006, the plaintiff met with Dr. Stewart, who deemed it necessary to remove her gall bladder. DE 17 Exhibit A, K.  On May 4, 2006, the plaintiff had pre-operative work done, and on May 10, 2006, her gall bladder was removed.  DE 17 Exhibit A, K.

These facts fully satisfy the regulatory requirements of 29 C.F.R. § 825.114 of a serious health condition and no reasonable jury could find otherwise.  Thus, the plaintiff has demonstrated that she was entitled to FMLA leave.

*2.  Certification*

An employee's right to FMLA leave is subject to the certification requirements of 29 U.S.C. § 2913.  Failure to meet the certification requirements renders the employee's absences unprotected by the FMLA.  Under 29 U.S.C.§ 2613(b), a certification is sufficient if it states (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health-care provider regarding the condition; and (4) a statement that the employee is unable to perform the functions of her position.  When the need for leave is not foreseeable, an employee must provide certification within the time frame requested by the employer or as soon as reasonably possible under the particular facts and circumstances.  29 C.F.R. § 825.311.  If an employee never produces the certification, the leave is not FMLA leave.  *Id.*

9

The defendant provided the plaintiff fifteen days to submit her certification form, beginning on March 27, 2006.  DE 16 McDougal Depo Exhibit 20.  The plaintiff faxed the defendant the Certification Form on March 30, 2006; thus, the Certification Form was timely.  The form used by the defendant, Form WH-380, was developed by the United States Department of Labor to use in obtaining medical certification from health-care providers that meets FMLA's certification requirements.  29 C.F.R. § 825.306.  Questions three and four on the form seek to ascertain whether the plaintiff has a "serious medical condition" satisfying the first requirement of FMLA leave.  *Hoffman v. Professional Med Team,* 270 F. Supp. 2d 954, 957 (W.D. Mich 2003).  The plaintiff's doctor certified that the plaintiff's condition qualified as a "serious health condition" under the second category[4] and he identified the plaintiff's abdominal pain, vomiting and lumbar pain as the medical facts supporting his certification.  DE 17 Exhibit F.  The doctor indicated that the plaintiff's condition commenced on March 17, 2006, and that the probable duration

---

[4] The second category states that a "serious health condition" is defined as "an illness, injury impairment, or physical or mental condition that involves a period of incapacity of more than three consecutive calendar days (including any subsequent treatment or period of incapacity relating to the same condition), that also involves (1) treatment two or more times by a health care provider, by a nurse or physician's assistance under direct supervision of a health care provider, or by a provider of health care services . . . under orders of, or on referral by, a health care provider; or (2) treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of a health care provider."  Further, the form specifically notes that "treatment includes examinations to determine if a serious health condition exists and evaluations of the condition."  It also explains that "a regimen of continuing treatment includes . . . a course of prescription medication. . . to resolve or alleviate the health condition."  DE 17 Exhibit G.

of the condition was unknown. *Id.*  It was also unknown whether the plaintiff would require additional treatments for her condition, but the doctor noted that the plaintiff required additional treatment by another provider of health services and she was being referred to Dr. Holander for a possible EGD.  *Id.*  The doctor certified that the plaintiff was subject to a regimen of continuing treatment under his supervision by way of prescription medications of Aciphex, Mobic, Flexel, Phenegran and Lortab.  *Id.*  The plaintiff's doctor also certified that she was unable to perform work of any kind due to her condition.  *Id.*

At the heart of both parties' motions for summary judgment is whether this certification was complete and whether it provided sufficient information entitling the plaintiff to FMLA leave.  The defendant contends that the plaintiff's FMLA claim fails because the above-described Certification Form was insufficient as a matter of law.  The defendant claims that the form failed to inform Wimp whether the plaintiff was entitled to leave, so that the defendant properly granted the plaintiff's FMLA leave to extend only to March 30, 2006.  Specifically, the defendant first argues the Certification Form did not provide information to enable Wimp to determine whether the plaintiff was suffering from more than just gas or the flu. Ordinarily, unless complications arise, the flu and upset stomach are conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave.  29 C.F.R. § 825.114(c).  However, the defendant was not allowed to ask for a diagnosis from the plaintiff's health-care provider, because the Certification

11

Form itself does not request such information.  *See* 29 C.F.R. § 825.306 (Form WH-380 may be used by an employer; however, no additional information may be required).  As previously mentioned, treatment is valid under the FMLA even if its purpose is only to "determine if a serious health condition exists."  29 C.F.R. § 825.114(b).  "Where an employee is absent from work for more than three consecutive days, pursuant to a doctor's orders, to allow for testing to determine the precise nature of the condition, FMLA coverage for that leave should not depend on the nature of the ultimate diagnosis."  *Thorson v. Gemini, Inc.*, 998 F. Supp. 1034, 1037 (N.D. Iowa 1998) (where plaintiff was absent from work for at least four consecutive days, pursuant to doctor's orders, and during that absence saw a doctor at least twice, was prescribed medication, and underwent further testing, it constituted a serious medical condition for purposes of FMLA, even though her ultimate diagnosis did not turn out to be a condition that is typically considered serious.); *see also Miller v. AT & T,* 60 F.Supp.2d 574, 580 (S.D. W. Va. 1999)("employers may not substitute their personal judgments for the test in the regulations or the opinions of the health care providers of employees to determine whether an employee is entitled to FMLA leave for a serious health condition").  The court finds that the defendant was not entitled to request information about the diagnosis; therefore, the Certification Form is not insufficient as to that issue.

Second, the defendant argues that the form was insufficient because it

lacked a specific duration to enable the employer to determine the length of the leave request.  If the form was incomplete, the defendant needed to inform the plaintiff of that fact and provide her a "reasonable opportunity to cure any such deficiency."  29 C.F.R. § 825.305.  On the other hand, if the plaintiff submitted a complete certification signed by the health-care provider, the defendant could not request additional information from the plaintiff's health-care provider; instead, "a health care provider representing the [defendant could] contact the [plaintiff's] health care provider, with the [plaintiff's] permission, for purposes of *clarification* . . . of the medical certification."  29 C.F.R. § 825.307 (emphasis added).  Although the defendant argues in its motion for summary judgment that the Certification Form was incomplete, Wimp, Altec's employee who approves or denies FMLA leave requests, stated that the form was complete.  DE 16 Wimp Deposition at 42.  Wimp testified that she needed "clarification of the health condition as to whether or not it was a serious health condition and the length of time that the associate would be off from work."  *Id.* at 43.[5]  Thus, the court need not determine the factual issue of whether the "unknown" duration was sufficient under the law to fulfill the plaintiff's requirement to submit a sufficient form, because the defendant found the form complete.  *See* 29 C.F.R. § 2613 (certification must state probable

---

[5]Additionally, Wimp noted in her Response to Leave of Absence Request that the Certification Form was "very *vague* and does not provide enough information to excuse any days past March 30."  DE 17 Exhibit H (emphasis added).  Merriam-Webster's Dictionary 577 (1998) defines vague as "not clear, definite, or distinct" and Black's Law Dictionary (8th ed. 2004) defines it as "imprecise" and "uncertain."  Neither definition encompasses the notion of incompleteness.

13

duration of condition to be sufficient).[6]  Because Wimp sought clarification only,

under the regulations she could not request the plaintiff to complete a second

Health Certification Form to support days beyond March 30, 2006.[7]  Instead, Wimp

had the option to have a health-care provider representing the defendant contact

Dr. Nanda to seek clarification as to the end date, as opposed to relying on a

hospital note dated before the Certification was signed in setting the end date of

---

[6] The defendant cites *Novak v. Metrohealth Medical Center,* 503 F.3d 572, 578 (6th Cir. 2007), in support of its argument that failure to provide a duration rendered the Certification Form incomplete.  Unlike *Novak,* where the certification form had empty spaces in the "medical facts" and "duration" sections, the plaintiff in this case provided a form that contained a probable duration.  Further, Wimp's testimony that the form was complete limits the defendant's ability to now argue to the contrary.

[7]Even without the duration estimate, the doctor's certification provided enough information for Wimp to determine that the plaintiff suffered from a serious health condition as defined by the regulations entitling her to leave, especially in light of the fact that the defendant granted leave based on that form until March 30, 2006.  By checking box two, Dr. Nanda indicated that the plaintiff had a serious health condition, and he supported that certification with medical facts. Further, the condition began on March 17, 2006, and had incapacitated the plaintiff until at least the time the form was signed on March 28, 2006, thus lasting for more than three calendar days.  Additionally, the plaintiff was under a continued regimen of prescription medications from at least one visit with Dr. Nanda. Alternatively, she had seen Dr. Nanda and was being referred to Dr. Holander for further testing, indicating she was receiving treatment at least two times by a health-care provider.  Finally, Dr. Nanda stated that the plaintiff was unable to perform all functions of her job.  Thus, the form provided information to inform the defendant that the plaintiff was suffering from a serious health condition. Although the defendant argues in its reply that the form failed as to other aspects beyond diagnosis and duration, such as failing to describe the purpose of the medications and the number of additional treatments that would be needed, the proper procedure would have been to inform the plaintiff of the incompleteness and allow her an opportunity to cure any deficiency.  29 C.F.R. § 825.305(d).  Wimp concedes that at the time the Certification Form was submitted she needed clarification only as to diagnosis and duration.

14

March 30, 2006.  By failing to seek clarification, the defendant violated the regulations and interfered with the plaintiff's FMLA rights.

Rather than seeking clarification, Wimp requested that the plaintiff complete another Health Certification "to state the diagnosis with specific reasons for the incapacity and a better idea of how long it could last."  DE 17 Exhibit H.  The defendant argues that this request was proper because it found the Certification Form insufficient to excuse any days after March 30, 2006.  The defendant further argues that because the plaintiff failed to submit the second form, she was not entitled to leave beyond March 30 and, therefore, her employment was terminated for her failure to return after the expiration of her approved FMLA leave.[8]  As previously discussed, it was improper for Wimp to ask for a diagnosis. Additionally, because Wimp found the form complete, she could not request a second Certification of Health Care Provider Form from the plaintiff.  29 C.F.R. § 825.307.  Whether or not the plaintiff submitted the second certification form is irrelevant.  Because it was improper to request the second certification form, it was equally improper to terminate the plaintiff for her failure to provide it.

Finally, as previously noted, to exercise the right to request that leave be

_____

[8] The defendant's Response to Leave of Absence Request stated that "associates who fail to return to work on the first scheduled working day after their approved FMLA leave has been exhausted, shall be treated as having voluntarily terminated employment with Altec."  DE 17 Exhibit H.  Nonetheless, the March 30, 2006, end date was not listed on the Certification Form.  Having found the form to be complete, Wimp should have exercised the employer's rights under the regulations by seeking clarification as to the end date.

15

supported by a certification, "*at the time the employer requests certification*, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification."  29 C.F.R. §825.305 (emphasis added).  The defendant has presented no proof that *at the time* it first requested certification, the employer advised the plaintiff of the consequences of not providing a proper certification.  The defendant's Leave of Absence Request form – which states that "associates who fail to return to work on the first scheduled working day after their approved FMLA leave has been exhausted, shall be treated as having voluntarily terminated employment with Altec" – does not refer to or mention the consequences of not turning in the form.   DE 17 Exhibit E. Further, the letter which the defendant sent to the plaintiff requesting that she return the certification form within fifteen days also failed to list the consequences of not returning the form in a timely manner.  DE 16 McDougal Deposition Exhibit 20.  The defendant failed to advise the plaintiff of the anticipated consequences of not providing a proper certification when it was first requested.  Whether or not consequences were disclosed when the second certification form was requested does not alter the first violation of the regulations.  This violation of the regulations interfered with the plaintiff's rights under the FMLA.  29 CFR § 825.220(b).

B.  Denial of Benefits

To prevail on the FMLA interference claim, the plaintiff must establish that the defendant denied her benefits to which she was entitled under the FMLA.

*Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).  The

FMLA requires employers (1) to provide eligible employees with a total of twelve

work weeks of leave during any twelve month period, 29 U.S.C. §2612(a)(1); (2)

to restore the employee to the pre-leave position with the employer, 29 U.S.C.

§2614; and (3) not to interfere with, restrain, or deny the exercise of any rights

provided under the FMLA, 29 U.S.C. §2615.  "If an employer takes an employment

action based, in whole or in part, on the fact that the employee took FMLA-

protected leave, the employer has denied the employee a benefit to which he is

entitled." *Wysong v. Dow Chemical Co,* 503 F.3d. 441, 447 (6th Cir. 2007).

Clearly, a termination which results from the taking of FMLA leave constitutes an

interference with such leave.  *Derrick v. Metropolitan Government of Nashville,*

2007 U.S. Dist. Lexis 92472 (M.D. Tenn. 2007).  The plaintiff has met her burden

of proving she was entitled to FMLA leave.  Wimp stated the plaintiff was

terminated "because she failed to provide appropriate documentation to support her

request for leave absence."  DE 16 Wimp Deposition at 21.  However, this court

has discussed the impermissibility of the second request under the regulations.  The

defendant's failure to follow the regulations resulted in a denial of FMLA benefits to

which the plaintiff was entitled.  Thus, the court finds the plaintiff has

demonstrated a prima facie case under her FMLA interference case and is entitled

to a judgment as a matter of law.

**IV.  FMLA Retaliation Claim**

The FMLA makes it "unlawful for any employer to discharge . . . any individual for opposing any practice made unlawful by this subchapter."  29 USC 2615.  In contrast to an interference claim where the employer's intent is not relevant as the court looks to whether the employer provided its employee with the entitlements set forth in the FMLA, under a retaliation claim, the employer's motive is an integral part of the analysis.  "The employer's motive is relevant because retaliation claims impose liability on the employers that act against employees specifically *because* those employees invoked their FMLA rights."  *Edgar v. JAC Products, Inc.,* 443 F.3d 501(6th Cir. 2006).  In her response to the defendant's motion for summary judgment, the "plaintiff acknowledges that her claim against the defendant is appropriately categorized as an interference claim under the FMLA and, therefore, she abandons her retaliation claim."  DE 19.  Thus, the plaintiff having abandoned the retaliation claim and thereby having not presented proof on the matter, the defendant's motion for summary judgment as to the retaliation claim will be granted.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (to defeat summary judgment, nonmoving party must come forward with specific facts showing there is a genuine issue for trial).

## V.  Conclusion

The court will grant summary judgment for the defendant on the plaintiff's claim for retaliation under the FMLA.  The court will also grant summary judgment for the plaintiff on her claim that the defendant interfered with her rights under the

18

FMLA.  Accordingly,

**IT IS ORDERED** that the plaintiff's motion for partial summary judgment (DE 17) is **GRANTED**. The pretrial conference and trial of this action will address the issue of damages.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (DE 16) is **GRANTED IN PART** and **DENIED IN PART** as discussed above.

Signed on  April 8, 2008

Jennifer B. Coffman, Judge
United States District Court

19